Filing # 169793677 E-Filed 03/28/2023 11:46:59 AM

**IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT**
**IN AND FOR BROWARD COUNTY, FLORIDA**
**CIVIL DIVISION**

AMPARO BERROA, an individual,                    Case No.: CACE23003177

        Plaintiff,

v.

AJIX, INC., d/b/a CAPSCANADA
d/b/a CAPSULINE, a Florida Corporation,

        Defendant.

_____/

DATE: 3-29-23
TIME: 10:01 AM
SERVER: _____
ID# 1569

## SUMMONS

**THE STATE OF FLORIDA**
**To Each Process Server or Sheriff of the State:**

    YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint or Petition in this lawsuit on the Defendant:  AJIX, INC., d/b/a CAPSCANADA d/b/a CAPSULINE, a Florida Corporation.

Theodore J. Klein, Registered Agent
AJIX, INC., d/b/a CAPSCANADA d/b/a
CAPSULINE, a Florida Corporation
8030 Peters Road
Building D, Suite 104
Plantation, FL 33324

    Each Defendant is required to serve written defenses to the Complaint on Plaintiff's attorneys, whose names and address are:  Seldon J. Childers, Esq. and Sarah K. Walker, Esq., Childers Law, LLC, 2135 NW 40th Terrace, Suite B, Gainesville, FL 32605, within 20 days after service of this Summons on the Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on the Plaintiff's attorneys or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

    WITNESS my hand and the seal of said Court on this _____ day of _____ MAR 28 2023
2023.

**Clerk of the Circuit Court**

by: _____
**Deputy Clerk**

**BRENDA D. FORMAN**

Filing # 168434981 E-Filed 03/09/2023 07:04:52 PM

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA
CIVIL DIVISION

AMPARO BERROA, an individual,                    Case No.: _____

    Plaintiff,

v.

AJIX, INC., d/b/a CAPSCANADA
d/b/a CAPSULINE, a Florida Corporation,

    Defendant.

_____/

### PLAINTIFF'S COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiff AMPARO BERROA ("Plaintiff" or "Berroa"), an individual, by and through her undersigned counsel, seeks a judgment and award of damages against Defendant, AJIX, INC. d/b/a CAPSCANADA d/b/a CAPSULINE ("Defendant" or "Ajix"), under (1) the Florida Civil Rights Act of 1992 ("FCRA"), Florida Statutes §§ 760.01-760.11; (2) Title VII of the Civil Rights Act of 1964, as Amended, ("Title VII"), 42 USC §§2000e *et seq.*; and (3) the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. In support, Plaintiff states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This is an action for damages in excess of the sum of $50,000.00, exclusive of interest and costs.

2. At all times material hereto, the Plaintiff was a resident in Broward County, Florida.

3. At all times material hereto, Defendant Ajix was a Florida for-profit company headquartered and operating in Broward County, Florida, and can be served at: 8030 Peters Road, Building D, Suite 104 Plantation, FL 33324. A copy of the 2023 Annual Report is attached hereto as **Exhibit A**.

Complaint
Berroa v. Ajix, Inc.
Page 1 of 21



4.      Ajix does business under the registered fictious names CapsCanada and Capsuline.

5.      At all times material hereto, Plaintiff was employed by Ajix as a personal assistant.

6.      This Court has jurisdiction over Plaintiff's Florida Civil Rights Act claims pursuant to section 760.11(4), Florida Statutes, and over Plaintiff's state and federal law claims pursuant to section 26.012, Florida Statutes.

7.      Venue is proper in this Court pursuant to section 47.011, Florida Statutes, because Broward County is the county where Ajix operates and where the cause of action accrued.

8.      All conditions precedent to the filing of this action have occurred, have been performed, or have been waived.

<div align="center">

**GENERAL ALLEGATIONS**

</div>

9.      Plaintiff was born in Panama, and her native language is Spanish.

10.     Plaintiff is a life-long Catholic. She was baptized in the church, was married in the church, and had her children baptized as Catholics.

11.     Since immigrating to Florida, she has maintained a close relationship with the priest from her Panamanian parish and has continued to donate to that church.

12.     In or around 1999, Ajix hired Plaintiff as a personal assistant in its CapsCanada business.

13.     CapsCanada describes itself as "one of the world's leading providers of high quality, empty, hard capsules serving global pharmaceutical and dietary supplement markets" for 30 years, through "[t]hree generations of family owners." *See* https://capscanada.com/company/ (last visited 02/28/2023).



14.     Ajix's Board of Directors consists of: (1) President, Secretary, Treasurer, Director Saul Gilinski; (2) Vice President Michael McTiernan; (3) Vice President Max Gilinski; (4) Director Isaac Gilinski; and (5) Director Jonathan Gilinski. *See* 2023 Annual Report at **Exhibit A**.

15.     When Ajix hired her, Plaintiff was 48 years old.

16.     As a personal assistant for the CapsCanada business, Plaintiff performed a variety of duties, including custodial work and office caretaker duties.

17.     In or about 2002, Ajix Director Jonathan Gilinski began operating another Ajix business under the name of Capsuline, distributing smaller quantities of hard capsules, from the same physical location as the CapsCanada site where Plaintiff was employed.

18.     In or about 2002, Ajix Vice President Michael McTiernan ("McTiernan") ordered Plaintiff to also assist Jonathan Gilinsky at Capsuline, including assisting in packaging capsules, and cleaning Capsuline's offices, bathrooms, and kitchen, in addition to her duties for CapsCanada.

19.     Plaintiff performed duties for both CapsCanada and Capsuline until her termination.

20.     During Plaintiff's tenure, she was an exemplary employee, earning multiple positive performance reviews, yearly gift cards as a token of gratitude, and an award on March 10, 2019, for twenty years of dedicated service.

21.     In or around March of 2020, the World Health Organization declared Covid-19 a pandemic. Shortly thereafter, a national State of Emergency due to the Covid-19 pandemic, was declared.

22.     Throughout the Covid-19 State of Emergency, Plaintiff continued to perform her job duties for both CapsCanada and Capsuline, in person.

23.     After the Covid-19 State of Emergency was declared, Ajix began requiring employees, including Plaintiff, to wear a mask while at work, as a precaution against the transmission of Covid-19.

24.     Plaintiff complied with this policy.

25.     In or about February of 2021, while Plaintiff was walking past his office, Ajix Vice President McTiernan inquired whether Plaintiff had been vaccinated for Covid-19.

26.     Plaintiff responded that she had not.

27.     About six months later, on or about August 9, 2021, Plaintiff began to experience respiratory symptoms at work.

28.     She left work to seek medical treatment.

29.     While en route to the hospital, McTiernan called Plaintiff to inquire whether she had been tested for Covid-19.

30.     Plaintiff responded that she had not yet arrived at the hospital.

31.     Plaintiff was admitted to the hospital for treatment.

32.     During her hospital stay, Plaintiff received several phone calls from Walter Tena, the personal driver for one of Ajix's owners, inquiring about her well-being.

33.     Teo Zorrilla, a CapsCanada accountant, also called Plaintiff while she was at the hospital to inquire about her well-being, and to inform her that McTiernan wanted to talk to her.

34.     Plaintiff replied that she would speak to McTiernan when she was discharged.

35.     CapsCanada Warehouse Manager Carla Basse also called Plaintiff's husband's phone while Plaintiff was in the hospital. Plaintiff's daughter answered the phone call. Ms. Basse instructed Plaintiff's daughter to call her as soon as she knew whether anyone in Plaintiff's family had tested positive for Covid-19.

36.     On or about August 20, 2021, McTiernan spoke with Plaintiff over the phone. CapsCanada employee Teo Zorrilla and Plaintiff's daughter were also on the call to translate for Plaintiff and McTiernan.

37.     During the call, McTiernan requested that Plaintiff be tested for Covid-19 and provide him with the results, before returning to work. He also informed Plaintiff that she had to be vaccinated for Covid-19 as a condition of continued employment.

38.     Plaintiff responded that, for religious reasons, she did not intend to obtain a Covid-19 vaccination.

39.     On or about August 22, 2021, Plaintiff was tested for Covid-19 infection, which test came back negative.

40.     On or about August 24, 2021, Plaintiff's medical provider, Courtney Lennon, PA-C, wrote a note stating that Plaintiff had tested negative for Covid-19 and was "medically cleared to return to work." Ms. Lennon's Note is attached hereto as **Exhibit B**.

41.     On or about August 25, 2021, Plaintiff emailed Ms. Lennon's note and the negative Covid-19 test result to McTiernan.

42.     Having received no response from McTiernan, Plaintiff emailed him again on or about August 29, 2021, stating that "[a]s [he] already kn[e]w," her Covid-19 test was negative, that her health was "back to normal," and that she was "ready to work." *See* Email attached as **Composite Exhibit C**. She further stated that she was choosing not to be vaccinated because of her "religious faith," and her belief that the risks are "greater than the benefits," but offered to submit to periodic testing "for everyone's peace of mind."

43.     On or about August 31, 2021, McTiernan responded that he would "discuss this with owners," but in the meantime instructed Plaintiff not to return to work and advised that Ajix would pay her regular wages. *See* Email attached as **Composite Exhibit C**.

44.     Nine days later, on September 9, 2021, McTiernan wrote to Plaintiff stating, that Ajix "would very much like to resolve this situation." *See* Email attached as **Composite Exhibit C.**

45.     Confused, Plaintiff asked for clarification regarding "what situation" McTiernan was referring to, stating that there had never been any issues with her work and she had been given a clean bill of health to return to work. Guessing that the "issue" might be Covid vaccination, Plaintiff stated that she was not planning to get vaccinated.

46.     McTiernan responded that he wanted "to sit with [Plaintiff] to discuss both [her] and the company's concerns regarding vaccination . . .," which Plaintiff agreed to do. *See* **Composite Exhibit C.**

47.     Plaintiff met with McTiernan on or about September 13, 2021.

48.     During that meeting, which occurred 24 days *after* Plaintiff notified McTiernan of her religious objection to Covid-19 vaccination, McTiernan gave Plaintiff Ajix's undated, written vaccination policy **for the first time**. *See* Letter attached as **Exhibit D.**

49.     The policy purported to: (1) apply to all employees who held specific positions within the company; and (2) provide for religious and medical accommodations.

50.     Plaintiff told McTiernan that, as a Catholic, she believes abortion is immoral, and she objects to the Covid-19 vaccines because cell lines from aborted fetuses were used in researching the vaccines. In addition, she stated that she believes that she is obligated to care for her body as a temple of the Holy Spirit. As such, she told McTiernan that her religious faith would not allow her to get vaccinated with one of the Covid-19 vaccines, all of which were connected to abortion, and the risks of which outweighed the benefits.

51.     McTiernan questioned the sincerity of her religious beliefs against vaccination, noting that Pope Francis encouraged vaccination.

52.     Plaintiff acknowledged the Pope's stance, but noted that other Catholic leaders and a multitude of Catholics objected to the vaccines because of their connection to abortion.

53.     Plaintiff stated that she was willing to continue to wear a mask at work and submit to periodic testing for Covid-19, but that her religious beliefs prevented her from getting vaccinated.

54.     Even though Plaintiff had performed her job duties, in person, throughout the pandemic, McTiernan informed her during the meeting that there was no accommodation that could be made for her religious objection to getting vaccinated, and stated that she had to get vaccinated because of her age.

55.     Seven days later, on September 20, 2021, McTiernan informed Plaintiff that "ownership . . . still fe[lt] the person in [Plaintiff's] position requires vaccination for the safety of the staff." *See* Email as **Exhibit E**. McTiernan further stated that since he understood Plaintiff's "position regarding not being vaccinated . . ., [she would] not be able to continue in [her] position with the company." *See* **Exhibit E**.

56.     Upon information and belief, Ajix employee Christie Andrews is in her 40's and was not required to be vaccinated to maintain her employment.

57.     Upon information and belief, Ajix employee Teo Zorrilla is in his 50's and was not required to be vaccinated to maintain his employment.

58.     As a result of, and immediately following, Defendant's termination of Plaintiff's employment, Plaintiff began to suffer from anxiety and depression, which conditions negatively impacted her health in other ways.

59.     These conditions have been ongoing since her termination.

60.     Plaintiff has retained the undersigned attorneys and has agreed to pay them a reasonable fee for their services.

## COUNT I - RELIGIOUS DISCRIMINATION CONTRARY TO
## FLORIDA CIVIL RIGHTS ACT, §760.07, §760.10, FLA. STAT.

61.     Paragraphs 1-60 are incorporated by reference.

62.     The Florida Civil Rights Act ("FCRA") prohibits discrimination in employment "because of race, color, **religion**, gender, pregnancy, national origin, age, handicap, or marital status . . . ." § 760.07, Fla. Stat.  (emphasis supplied).

63.     Among other things, the FCRA prohibits employers from:

> (1)(a) "discharg[ing] . . . any individual, or otherwise . . . discriminat[ing] against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

> (6) . . . print[ing], or caus[ing] to be printed or published, any notice or advertisement relating to employment, membership, classification, referral for employment, or apprenticeship or other training, indicating any preference, limitation, specification, or discrimination, based on race, color, religion, sex, pregnancy, national origin, age, absence of handicap, or marital status.

§760.10, Fla. Stat.

64.     At all times relevant to this Complaint, Ajix employed more than 15 employees, and was an employer within the meaning of the FCRA. §760.02(7), Fla. Stat.

65.     Ajix engaged in employment practices prohibited by the FCRA by imposing a Covid-19 vaccination mandate which threatened to terminate employees because of their religious beliefs against Covid-19 vaccination.

66.     Ajix further engaged in prohibited employment practices under the FCRA by implementing a vaccine mandate targeted at forcing Plaintiff to choose between: (1) compromising her sincerely-held religious beliefs against Covid-19 vaccination; and (2) maintaining her decades-long employment with the company.



67.     Ajix could have accommodated Plaintiff's religious exemption request without undue hardship, especially considering that: (1) Plaintiff worked in person throughout the pandemic, including when no vaccine was available; (2) Plaintiff was willing to submit to testing as an additional safeguard against Covid-19 transmission (which Ajix had not previously required) and continue wearing a mask at work; and (3) the staff whose safety Ajix cited as its reason for denying Plaintiff's exemption, were presumably more protected from Covid transmission at work than they had been before the policy was implemented, since they were now required to be vaccinated.

68.     Instead, Ajix unlawfully denied Plaintiff's accommodation request, and abruptly and unlawfully terminated Plaintiff's decades-long employment.

69.     Ajix's conduct described above was willful, malicious, and engaged in with a reckless disregard of Plaintiff's rights under Florida law. Plaintiff has suffered damages as a result of Ajix's discriminatory conduct.

70.     Defendant's unlawful discrimination against Plaintiff is the direct and proximate cause of Plaintiff's lost wages and benefits, lost earning capacity, pain and suffering, emotional harm, embarrassment, loss of enjoyment of life and other non-pecuniary losses.

71.     Plaintiff has complied with all conditions precedent to the filing of this claim required by section 760.11, Florida Statutes. Plaintiff timely filed a charge of religious discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 22, 2021, which charge was dual filed with the Florida Commission on Human Relations ("FCHR"). The Charge was pending for more than 180 days without any determination being made by the FCHR.

WHEREFORE, Plaintiff Berroa demands relief in the form of back pay, front pay, loss of benefits, compensatory damages, damages for future pecuniary losses, emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, medical expenses, punitive damages, attorney's fees and costs with prejudgment interest, injunctive relief and reinstatement, and any other such relief as allowed by law and that the Court deems necessary and just.

<div align="center">

**COUNT II - DISCRIMINATORY TERMINATION BASED ON AGE IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, § 760.07, 760.10, FLA. STAT.**

</div>

72.     Paragraphs 1-60 are incorporated by reference.

73.     The FCRA prohibits discrimination in employment because of age. *See* §760.07, Fla. Stat.

74.     At all times relevant to this Complaint, Ajix employed more than 15 employees, and was an employer within the meaning of the FCRA. §760.02(7), Fla. Stat.

75.     Plaintiff Berroa was 70 years old and qualified for her position when Ajix fired her.

76.     Ajix violated the FCRA when it denied Plaintiff's request for a religious accommodation to its vaccination policy based on her age, and subsequently terminated her employment.

77.     During their September 13, 2021, meeting, after Plaintiff had notified him of her religious objection to Covid-19 vaccination, McTiernen stated that Plaintiff had to be vaccinated because of her age.

78.     In his September 20, 2021, email, McTiernan stated that Plaintiff had to be vaccinated "for the safety of the staff." *See* **Exhibit E**.

79.     However, this reason was pretextual, especially since: (1) the staff about whom Ajix was purportedly concerned, would have been required to be vaccinated under the policy, and so presumably would have been more protected than they had been before the policy was implemented; (2) Ajix had deemed it safe for Plaintiff to perform her job in person throughout



the pandemic, including before a vaccine was even available; and (3) Plaintiff offered to submit to periodic testing for Covid-19 (which Ajix had not previously required) and to continue wearing a mask at work.

80.     Although Ajix refused to accommodate Plaintiff's request for a religious exemption, it allowed substantially younger employees – Christie Andrews, who was in her 40's, and Teo Zorrilla, who was in his 50's – to remain employed, despite being unvaccinated.

81.     Immediately after firing Plaintiff, Ajix assigned her custodial duties to William Reyes, who, at age 51, was almost 20 years younger than Plaintiff.

82.     Ajix assigned Plaintiff's office caretaker duties to Jennifer Califf, who, at age 54, was over 15 years younger than Plaintiff.

83.     Ajix's conduct described above, was willful and malicious, and it engaged in this conduct with a reckless disregard of Plaintiff's rights under Florida law. Plaintiff has suffered damages as a result of Ajix's discriminatory conduct.

84.     Defendant's unlawful discrimination against Plaintiff is the direct and proximate cause of Plaintiff's lost wages and benefits, lost earning capacity, pain and suffering, emotional harm, embarrassment, loss of enjoyment of life, and other non-pecuniary losses.

85.     Plaintiff has complied with all conditions precedent to the filing of this claim required by section 760.11, Florida Statutes.  Plaintiff timely filed a charge of age discrimination with the EEOC on November 22, 2021, which charge was dual filed with the FCHR. The Charge was pending for more than 180 days without any determination being made by the FCHR.

WHEREFORE, Plaintiff Berroa demands relief in the form of back pay, front pay, loss of benefits, compensatory damages, damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, medical expenses, punitive damages, attorney's fees and costs with prejudgment interest, injunctive relief

and reinstatement, and any other such relief as allowed by law and that the Court deems necessary and just.

### COUNT III - RETALIATION CONTRARY TO THE FLORIDA CIVIL RIGHTS ACT, § 760.10(7), § 760.10, FLA. STAT.

86.     Paragraphs 1-60 are incorporated by reference.

87.     The FCRA prohibits an employer from "discriminat[ing] against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section." § 760.10(7), Fla. Stat.

88.     At all times relevant to this Complaint, Ajix employed more than 15 employees, and was an employer within the meaning of the FCRA. §760.02(7), Fla. Stat.

89.     On or about August 20, 2021, in response to McTiernan informing her (while she was out on sick leave) that Ajix was requiring her to submit to Covid-19 vaccination as a condition of continued employment, Plaintiff asserted a religious objection to the requirement.

90.     She sought a religious accommodation to the vaccination requirement for a second time in her August 29, 2021, email, stating that she was choosing not to be vaccinated because of her "religious faith" and offering to submit to periodic testing for Covid-19.

91.     In her September 9, 2021, email, Plaintiff sent a message opposing Ajix's unwillingness to grant her religious accommodation to the vaccination requirement, stating that she would "not chang[e her] mind" and requesting that Ajix inform her when she could "resume [her] position." *See* **Composite Exhibit C.**

92.     On or about September 13, 2021, 24 days *after* Plaintiff had notified McTiernan over the phone of her religious objection to getting vaccinated, McTiernan gave Plaintiff Ajix's undated, written vaccination policy **for the first time.**

93.     During that meeting, Plaintiff again asserted her need for religious accommodation, based upon her sincerely-held religious beliefs stemming from her life-long Catholic faith.

94.     In response, McTiernan questioned the sincerity of her religious beliefs against vaccination, asserting that Pope Francis encouraged Catholics to get the vaccine.

95.     Only seven days later, Ajix summarily fired Plaintiff, purportedly because of Plaintiff's "position regarding not being vaccinated," and Ajix's "feel[ing that] the person in [Plaintiff's] position requires vaccination for the safety of the staff." *See* **Exhibit E.**

96.     Although Ajix refused to accommodate Plaintiff's request for a religious exemption to the vaccine mandate, upon information and belief, it allowed employees who had not requested religious exemptions, including Teo Zorrilla and Christie Andrews, to remain employed despite not being vaccinated.

97.     Ajix's stated reason for terminating Plaintiff's employment is pretextual and baseless, especially considering that: (1) Ajix had deemed it safe for Plaintiff to work in person throughout the pandemic, including when no vaccine was available; (2) Plaintiff was willing to submit to testing as an additional safeguard against Covid-19 transmission (which Ajix had not previously required) and to continue wearing a mask at work; and (3) the staff whose safety Ajix cited as its reason for denying Plaintiff's exemption, were presumably more protected from Covid transmission at work than they had been previously, since they would have been subject to the vaccine mandate.

98.     Ajix fired Plaintiff because she requested a religious accommodation to Ajix's vaccine mandate, and she opposed Ajix's unlawful refusal to grant the accommodation.

99.     Ajix's conduct described above was willful, malicious, and engaged in with a reckless disregard of Plaintiff's rights under Florida law. Plaintiff has suffered damages as a result of Ajix's retaliatory conduct.

100.    Ajix's retaliatory conduct is the direct and proximate cause of Plaintiff's lost wages and benefits, lost earning capacity, pain and suffering, emotional harm, embarrassment, loss of enjoyment of life, and other non-pecuniary losses.

101.    Plaintiff has complied with all conditions precedent to the filing of this claim required by section 760.11, Florida Statutes. Plaintiff timely filed a charge of retaliation with the EEOC on November 22, 2021, which charge was dual filed with the FCHR. The Charge was pending for more than 180 days without any determination being made by the FCHR.

WHEREFORE, Plaintiff Berroa demands relief in the form of back pay, front pay, loss of benefits, compensatory damages, damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, medical expenses, punitive damages, attorney's fees and costs with prejudgment interest, injunctive relief and reinstatement, and any other such relief as allowed by law and that the Court deems necessary and just.

## COUNT IV – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED ("TITLE VII") 42 USC §§2000e, *et seq*; DISCRIMINATION ON THE BASIS OF RELIGIOUS BELIEF AND PRACTICE

102.    Paragraphs 1-60 are incorporated by reference.

103.    Pursuant to Title VII:

It shall be an unlawful employment practice for an employer —

(1) To fail or refuse to hire or to discharge an individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, **religion**, sex, or national origin . . . .

42 U.S.C. § 2000e-2(a) (emphasis supplied).

104.     Under Title VII, religion "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

105.     At all times material hereto, Ajix was an employer as defined by Title VII, employing 15 or more employees and being engaged in an industry affecting commerce. *See* 42 U.S.C. § 2000e(b), (g), (h); 42 U.S.C. § 12111(2), (5).

106.     Ajix engaged in employment practices prohibited under Title VII by imposing a Covid-19 vaccination mandate which threatened to terminate employees because of their religious beliefs against Covid-19 vaccination.

107.     Ajix further engaged in prohibited employment practices under Title VII by implementing a vaccine policy targeted at forcing Plaintiff to choose between: (1) compromising her sincerely-held religious beliefs against Covid-19 vaccination; and (2) maintaining her decades-long employment with the company.

108.     Ajix could have accommodated Plaintiff's religious exemption request without undue hardship because: (1) Ajix had deemed it safe for her to work in person throughout the pandemic, including when no vaccine was available; (2) Plaintiff was willing to submit to testing as an additional safeguard against Covid-19 transmission (which Ajix had previously not required) and continue wearing a mask at work; and (3) the staff whose safety Ajix cited as its reason for denying Plaintiff's exemption, were presumably more protected from Covid transmission at work than they had been before the policy, since they were now required to be vaccinated.

109.     Instead, Ajix unlawfully denied Plaintiff's accommodation request, and abruptly and unlawfully terminated Plaintiff's decades-long employment.

110.     Ajix's conduct described above was willful and wanton and in reckless disregard of Plaintiff's statutory rights.

111.     Ajix's unlawful discrimination against Plaintiff is the direct and proximate cause of Plaintiff's lost wages and benefits, lost earning capacity, pain and suffering, emotional harm, embarrassment, loss of enjoyment of life and other non-pecuniary losses.

112.     Plaintiff timely filed a charge of discrimination with the EEOC on November 22, 2021. On December 10, 2022, the EEOC issued a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice. Thus, Plaintiff has complied with all conditions precedent to the filing of this claim required by Title VII, 42 U.S.C. § 2000e-5.

WHEREFORE, Plaintiff Berroa demands the following relief: past and future loss of wages and benefits, plus interest; reinstatement, or, in lieu of reinstatement, front pay, including benefits; all costs and reasonable attorneys' fees incurred in connection with this action; compensatory damages; punitive damages; and any other such relief as allowed by law and that the Court deems necessary and just.

### COUNT V - DISCRIMINATORY TERMINATION BASED ON AGE IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. §§ 621-634

113.     Paragraphs 1-60 are incorporated by reference.

114.     Under the ADEA, it is unlawful for an employer

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . .

29 U.S.C. §623(a).



115.    At all times relevant to this Complaint, Ajix was an employer as defined by the ADEA, employing 20 or more employees and being engaged in an industry affecting commerce. *See* 29 U.S.C. § 630(b).

116.    Plaintiff Berroa was 70 years old and qualified for her position when Ajix fired her.

117.    Ajix violated the ADEA when it denied Plaintiff's request for a religious accommodation to its vaccination policy based on her age, and subsequently terminated her employment.

118.    During their September 13, 2021, meeting, after Plaintiff had notified him of her religious objection to Covid-19 vaccination, McTiernan stated that Plaintiff had to be vaccinated because of her age.

119.    In his September 20, 2021, email, McTiernan stated that Plaintiff had to be vaccinated "for the safety of the staff." *See* **Exhibit E**.

120.    However, this reason was pretextual, especially since: (1) the staff about whom Ajix was purportedly concerned, would have been required to be vaccinated under the policy; (2) Ajix had deemed it safe for Plaintiff to perform her job in person throughout the pandemic, including before a vaccine was even available; and (3) Plaintiff offered to submit to periodic testing for Covid-19 (which Ajix had not previously required) and to continue wearing a mask at work.

121.    Although Ajix refused to accommodate Plaintiff's request for a religious exemption, it allowed substantially younger employees - Christie Andrews, who was is in her 40's, and Teo Zorrilla, who was is in his 50's – to remain employed, despite being unvaccinated.

122.    Immediately after firing Plaintiff, Ajix assigned her custodial duties to William Reyes, who, at age 51, was almost 20 years younger than Plaintiff.

123.    Ajix assigned Plaintiff's office caretaker duties to Jennifer Califf, who, at age 54, was more than 15 years younger than Plaintiff.

124.    Plaintiff has suffered damages because of Ajix's unlawful discriminatory actions, including past and future lost wages and benefits and the costs of bringing this action.

125.    Ajix willfully violated Plaintiff's rights under the ADEA and, as a result, is liable for liquidated damages.

126.    Plaintiff timely filed a charge of age discrimination with the EEOC on November 22, 2021. On December 10, 2022, the EEOC issued a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice. Thus, Plaintiff has complied with all conditions precedent to the filing of this claim required by the ADEA, 29 U.S.C. § 626(d)(1).

WHEREFORE, Plaintiff Berroa demands relief in the form of past and future loss of wages and benefits, plus interest; reinstatement or, in lieu of reinstatement, front pay, including benefits; liquidated damages incurred in connection with this action; reasonable attorney's fees and costs incurred in connection with this action; and any other such relief as allowed by law and that the Court deems necessary and just.

## COUNT VI - RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED ("TITLE VII") 42 U.S.C. §§ 2000e, *et seq.*

127.    Paragraphs 1-60 are incorporated by reference.

128.    Title VII prohibits an employer from discriminating against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

129.     At all times material hereto, Ajix was an employer as defined by Title VII, employing 15 or more employees and being engaged in an industry affecting commerce. *See* 42 U.S.C. § 2000e(b), (g), (h); 42 U.S.C. § 12111(2), (5).

130.     On or about August 20, 2021, in response to McTiernan informing her that Ajix would require her to submit to Covid-19 vaccination as a condition of continued employment, Plaintiff asserted a religious objection to the requirement.

131.     She sought a religious accommodation to the vaccination requirement for a second time in her August 29, 2021, email, stating that she was choosing not to be vaccinated because of her "religious faith" and offering to submit to periodic testing for Covid-19.

132.     In her September 9, 2021, email, Plaintiff sent a message opposing Ajix's unwillingness to grant her religious accommodation to the vaccination requirement, stating that she would "not chang[e her] mind" and requesting that McTiernan inform her when she could "resume [her] position." *See* **Composite Exhibit C.**

133.     Then on or about September 13, 2021, 24 days *after* Plaintiff had notified McTiernan over the phone of her religious objection to getting vaccinated, McTiernan gave Plaintiff Ajix's undated, written vaccination policy **for the first time.**

134.     During that meeting, Plaintiff again asserted her need for a religious accommodation, based upon her sincerely-held religious beliefs stemming from her life-long Catholic faith.

135.     In response, McTiernan questioned the sincerity of her religious beliefs against vaccination, asserting that Pope Francis encouraged Catholics to get the vaccine.

136.     Only seven days later, Ajix summarily fired Plaintiff, purportedly because of Plaintiff's "position regarding not being vaccinated," and Ajix's feeling that "the person in [Plaintiff's] position requires vaccination for the safety of the staff." *See* **Exhibit E.**

137.   Although Ajix refused to accommodate Plaintiff's request for a religious exemption to the vaccine mandate, upon information and belief, it allowed employees who had not requested religious exemptions, including Teo Zorrilla and Christie Andrews, to remain employed despite not being vaccinated.

138.   Ajix's stated reason for terminating Plaintiff's employment is pretextual and baseless, especially since: (1) Ajix had deemed it safe for Plaintiff to work in person throughout the pandemic, including when no vaccine was available; (2) Plaintiff was willing to submit to testing as an additional safeguard against Covid-19 transmission (which Ajix had not previously required) and to continue wearing a mask at work; and (3) the staff whose safety Ajix cited as its reason for denying Plaintiff's exemption, were presumably more protected from Covid transmission at work than they had been previously, since they would have been subject to the vaccine mandate.

139.   Ajix fired Plaintiff because she requested a religious accommodation to the vaccine mandate, and she opposed Ajix's unlawful refusal to grant it.

140.   Ajix's conduct described above was willful and wanton and in reckless disregard of Plaintiff's statutory rights.

141.   Ajix's unlawful retaliatory actions are the direct and proximate cause of Plaintiff's lost wages and benefits, lost earning capacity, pain and suffering, emotional harm, embarrassment, loss of enjoyment of life and other non-pecuniary losses.

142.   Plaintiff timely filed a charge of retaliation with the EEOC on November 22, 2021. On December 10, 2022, the EEOC issued a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice. Thus, Plaintiff has complied with all conditions precedent to the filing of this claim required by Title VII, 42 U.S.C. § 2000e-5.

WHEREFORE, Plaintiff Berroa demands the following relief: past and future loss of wages and benefits, plus interest; reinstatement, or, in lieu of reinstatement, front pay, including benefits; all costs and reasonable attorneys' fees incurred in connection with this action; compensatory damages; punitive damages; and any other such relief as allowed by law and that the Court deems necessary and just.

<div align="center">

**DEMAND FOR JURY TRIAL**

</div>

Plaintiff demands a trial by jury on all issues so triable.

Dated this 9th day of March, 2023.



CHILDERS LAW, LLC
2135 NW 40th Terrace, Suite B
Gainesville, Florida 32605
tel 866-996-6104  fax 407-209-3870

*/s/ Sarah K. Walker*
Seldon J. Childers
Florida Bar No. 61112
Sarah K. Walker
Florida Bar No. 59586
jchilders@smartbizlaw.com
swalker@smaratbizlaw.com
notice@smartbizlaw.com
*Attorneys for Plaintiff*



## 2023 FLORIDA PROFIT CORPORATION ANNUAL REPORT

**EXHIBIT A**

**FILED
Jan 20, 2023
Secretary of State
3460203840CC**

DOCUMENT# P94000003252

**Entity Name:** AJIX, INC.

**Current Principal Place of Business:**

3236 SW 30TH AVENUE
DANIA BEACH, FL 33312

**Current Mailing Address:**

3236 SW 30TH AVENUE
DANIA BEACH, FL 33312 US

**FEI Number:** 65-0462207

**Certificate of Status Desired:** Yes

**Name and Address of Current Registered Agent:**

KLEIN, THEODORE J
8030 PETERS ROAD
BLDG D, SUITE 104
PLANTATION, FL 33324 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

Electronic Signature of Registered Agent                                        Date

**Officer/Director Detail :**

| | |
|---|---|
| Title | PRESIDENT, SECRETARY, TREASURER, DIRECTOR |
| Name | GILINSKI, SAUL |
| Address | 3236 SW 30 AVENUE |
| City-State-Zip: | DANIA BEACH  FL  33312 |

| | |
|---|---|
| Title | VP |
| Name | MCTIERNAN, MICHAEL J |
| Address | 3236 SW 30TH AVE |
| City-State-Zip: | DANIA BEACH  FL  33312 |

| | |
|---|---|
| Title | DIRECTOR |
| Name | GILINSKI, JONATHAN |
| Address | 3236 SW 30TH AVENUE |
| City-State-Zip: | DANIA BEACH  FL  33312 |

| | |
|---|---|
| Title | VP, DIRECTOR |
| Name | GILINSKI, MAX |
| Address | 3236 SW 30TH AVE. |
| City-State-Zip: | DANIA BEACH  FL  33312 |

| | |
|---|---|
| Title | DIRECTOR |
| Name | GILINSKI, ISAAC |
| Address | 3236 SW 30TH AVE |
| City-State-Zip: | DANIA BEACH  FL  33312 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: MICHAEL J. MCTIERNAN                    VICE PRESIDENT             01/20/2023

Electronic Signature of Signing Officer/Director Detail                                        Date

**EXHIBIT B**

Comprehensive Health & Wellness Center, P.A. ~ Mark D. Chin-Lenn, M.D.
Courtney A. Lennon, PA-C | Lourdes K. Sanchez, PA-C | Benjamin Schlumbrecht, APRN
4040 Sheridan Street | Hollywood, FL 33021-3536
T: ███-7166 | F: ███-7169

August 24, 2021

To Whom It May Concern

**Re: Amparo Berroa (DOB: ███ 1951)**

**Subject: Patient Visit Note**

Please be advised that the above-referenced patient is currently under my care for a medical condition. The above patient was seen today on August 24th, 2021.

Patient has tested NEGATIVE for COVID on August 22nd, 2021 and is medically cleared to return to work.

If you should have any concerns or questions, please feel free to give me a call.

Kind regards,

Courtney Lennon, PA-C

Electronically signed by Courtney Lennon, PA-C on 08/24/2021 3:28 pm in ElationHealth

**COMPOSITE EXHIBIT C**

▇▇▇▇▇▇▇▇▇

| | |
|---|---|
| **From:** | Amparo Ordoñez ▇▇▇▇▇▇ |
| **Sent:** | Monday, November 15, 2021 10:39 AM |
| **To:** | CANDI HATHCOCK |
| **Subject:** | Fw: Dr. Docs requested by CapsCanada |
| **Attachments:** | image002.png; image001.png |

----- Forwarded Message -----
**From:** Amparo Ordoñez ▇▇▇▇▇▇▇
**To:** candi.hathcock ▇▇▇▇▇▇▇▇▇▇
**Sent:** Monday, November 15, 2021, 10:33:34 AM EST
**Subject:** Fw: Dr. Docs requested by CapsCanada

----- Forwarded Message -----
**From:** Mike McTiernan ▇▇▇▇▇▇▇
**To:** Amparo Ordoñez ▇▇▇▇▇
**Sent:** Thursday, September 9, 2021, 08:36:17 PM EDT
**Subject:** Re: Dr. Docs requested by CapsCanada

Good evening Amparo,
Is Monday @ ~8 ok ?

Sent from my iPhone

> On Sep 9, 2021, at 5:15 PM, Amparo Ordoñez ▇▇▇▇▇▇▇▇ wrote:

External Sender.

Mr. Mike , I am available Monday at any time or tomorrow from 7 to 8. You can schedule the hour. Thank you. Amparo

Sent from Yahoo Mail on Android

On Thu, Sep 9, 2021 at 4:19 PM , Mike McTiernan
▇▇▇▇▇▇▇▇▇ wrote:

Amparo,

I would really like to sit with you to discuss both you and the company's concerns regarding vaccination and the safety of all employees. The company is currently paying you your regular wages so I don't think it is out of line for us to ask you to come to the office for this discussion.

The decision whether to get vaccinated or not is obviously yours to make, as is your decision whether to sit down and discuss the matter.  I would like to have a talk with you but this is up to you.

1

**From:** Amparo Ordoñez <​█████████████████>
**Sent:** Thursday, September 9, 2021 1:23 PM
**To:** Mike McTiernan ████████████████
**Subject:** Re: Dr. Docs requested by CapsCanada

External Sender.

Good Afternoon Mr. Mike,

I'm a little confused can you please clarify? You've mentioned you would like to resolve this situation but, I'm not sure what situation you are referring to. I have never had a problem at work or any problem to discuss. As we previously exchanged       e-mails regarding my health I have a clean bill of health, and I am ready to go back to work. If the other issue besides my health is that you are mandating me to get vaccinated I am not changing my mind. I will not vaccinate. Please let me know when can I resume my position.

I am waiting for your response.

Amparo Berroa

On Thursday, September 9, 2021, 08:14:17 AM EDT, Mike McTiernan ████████████████████ wrote:

Good morning, Amparo,

I hope you and your family are well.

We would very much like to resolve this situation. Would you be able to come in tomorrow morning so we can discuss? I have a scheduled meeting from 10 until ~ 11:30 but am otherwise available. Since I know you need a ride here, one of our guys can give you a ride home after we talk so your family isn't inconvenienced.

If you will be available to come in, please let me know what time you will be here.  If you're not available tomorrow, then we can meet on Monday.

<image001.png>

**From:** Amparo Ordoñez <span style="background:black"> </span>
**Sent:** Tuesday, August 31, 2021 11:37 AM
**To:** Mike McTiernan <span style="background:black"> </span>
**Subject:** RE: Dr. Docs requested by CapsCanada

External Sender.

Good morning  Mr. McTierman:             I'm standing by waiting for your decision.      Thank
you,                                                                    Amparo

Sent from Yahoo Mail on Android

On Tue, Aug 31, 2021 at 7.09 AM ,Mike M cTieman

<span style="background:black"> </span> wrote:

Good Morning, Amparo,

I will discuss this with owners.  They have been out of the office and will return late next week.  In the meantime, please do not return to work.  The company will pay you your wages in the mean time – you will not have to use vacation days.

Stay well and hopefully we can come to an amicable arrangement.

FYI - I had only asked Teo to be on the phone call to ensure we both fully understood each other.  He has no role or responsibility in payroll or human resources, and is not involved in this issue going forward.

<image001.png>

**From:** Amparo Ordoñez <span style="background:black"> </span>
**Sent:** Sunday, August 29, 2021 10:42 PM

3

**To:** Mike McTiernan ████████████████; Teo Zorrilla ████████████████████
**Subject:** Re: Dr. Docs requested by CapsCanada

External Sender.
........................................

Hi Mr. Mike McTiernan,

As you already know, the Covid-19 Test came out negative. My health is back to normal. I am ready to work. I am choosing NOT to get Vaccinated due to my religious faith and the risks I believe are greater than the benefits. I am willing to get tested periodically for everyone's peace of mind.

Sincerely,  Amparo Berroa

On Wednesday, August 25, 2021, 03:29:56 PM EDT, Teo Zorrilla ██████████████████████ wrote:

Gracias, recibido.

<image002.png>

**From:** Amparo Ordoñez ███████████████████
**Sent:** Wednesday, August 25, 2021 3:06 PM
**To:** Mike McTiernan ████████████████; Teo Zorrilla ██████████████████
**Subject:** Dr. Docs requested by CapsCanada

External Sender.
........................................

Dear Mike Mctiernan

Here are the Doctor's documents that you requested per our conversation last week.

Thank you.

4

Amparo Berroa

&lt;image002.png&gt;
&lt;image001.png&gt;

**EXHIBIT D**



a Lyfe Group Co.

Dear Valued Employees,

We pride ourselves on being a workplace that puts the health and safety of our workers first. In the age of COVID-19, protecting employees has meant taking a number of measures, like instituting mask policies, enforcing social distancing and transitioning to remote work where possible because of the pandemic.

It's now increasingly clear that the best way we can protect our workplace and our employees moving forward is with COVID-19 vaccines. Vaccines have been proven to protect against serious illness from the novel coronavirus, as well as lessen the rates of transmission.

It's for all of these reasons, plus the legal requirement by the Occupational Safety and Health Administration's General Duty clause to provide each worker "employment and a place of employment, which are free from recognized hazards that are causing or are likely to cause death or serious physical harm," that we are requiring all employees in specific positions to receive an FDA authorized and/or approved  COVID-19 vaccination as a condition of continued employment.

Employees whose work responsibilities require them to be in our facility to complete their duties and whose role requires them to be in close contact with other employees and/or guests are required to be vaccinated.

Specifically, employees in the following positions are required to be vaccinated:

Warehouse worker                    Custodian
Drivers/Personal Assistant          Receptionist

In order to help our employees comply with our vaccination policy, we will offer paid leave for the time it takes to get vaccinated, as well as additional time as needed to rest if you're not feeling well after the shots. As most vaccinations will require two dosages, we realize it will take time to be fully vaccinated.  CapsCanada expects employees in the listed positions to work diligently to ensure they obtain the vaccinations as promptly as possible.  CapsCanada requires the employees in the listed positions to be able to show evidence of vaccination or of scheduled vaccination by 9/1/2021.  For those providing evidence of scheduled vaccination, full vaccination is required by 9/30/2021.

We are requiring that the employees in the above positions be fully vaccinated unless a reasonable accommodation is approved. To assist any employee who has a medical condition that prevents

them from safe vaccination, or who rejects vaccination because of sincerely held religious beliefs, a reasonable accommodation may be made. Employees requesting accommodations should request the accommodation in writing, explaining the reasons why they are seeking the accommodation in detail. CapsCanada will request additional information or documentation it deems necessary or appropriate to inform its decision on an employee's accommodation request. To request an accommodation, please contact myself.

Employees vaccinated pursuant to this policy shall provide confirmation of such vaccination in the form, time, and manner reasonably requested by CapsCanada. Such confirmation may require producing a vaccination card or documentation from the employee's healthcare provider of the administration of the vaccination. In such case, the employee will be responsible for providing any required consents and/or authorizations to the provider to disclose the information necessary to confirm the employee's vaccination. As with all identifiable employee medical information, the CapsCanada will safeguard information concerning COVID-19 vaccinations in accordance with applicable law.

For all other employees in the listed positions, failure to comply or cooperate with this vaccination policy may result in disciplinary action, up to and including termination of employment. After vaccination, everyone in the workplace should continue to follow all current guidance to protect themselves and others, including wearing a mask, maintaining social distancing, avoiding crowds, and cleaning hands often.

COVID-19 vaccines are an important tool to help stop the pandemic, but they don't mean we can stop taking all precautionary measures. CapsCanada is monitoring guidance from all applicable public health authorities and we reserve the right to modify this policy as we determine may be necessary or appropriate.

We understand some individuals may still have questions about the COVID-19 vaccine. We recommend visiting the CDC's page Myths and Facts About COVID-19 Vaccines for more information.

Please feel free to reach out to myself with any questions you may have.


Michael J. McTiernan

VP Finance & Administration

**EXHIBIT E**

| | |
|---|---|
| **From:** | Amparo Ordoñez ███████████ |
| **Sent:** | Monday, November 15, 2021 10:38 AM |
| **To:** | CANDI HATHCOCK |
| **Subject:** | Fw: Vaccination required for continued employment |

----- Forwarded Message -----
**From:** Mike McTiernan ████████
**To:** Amparo Ordoñez ███████████
**Cc:** Christie Andrews ████████████
**Sent:** Thursday, October 7, 2021, 12:50:33 PM EDT
**Subject:** RE: Vaccination required for continued employment

Good afternoon, Amparo,

I hope you and your family are well.

I just want to remind you that the severance offer, sent to you September 20, is valid for 21 days. If we do not receive your signed acceptance back by October 11, the offer is void.

In addition, if you should agree to the terms, you would have seven days to revoke the agreement should you change your mind.



# Michael J. McTiernan
VP Finance & Administration

████████████
O: ████ 6440
M: ████ 2365
3236 SW 30th Avenue
Dania Beach, FL 33312, USA


www.capscanada.com

**From:** Mike McTiernan
**Sent:** Monday, September 20, 2021 1:54 PM

1

**To:** Amparo Ordoñez
**Subject:** Vaccination required for continued employment

Good afternoon, Amparo,

After explaining our discussion from last Monday with ownership, they still feel the person in your position requires vaccination for the safety of the staff.

I understand your position regarding not being vaccinated.  As a result, I regret to write that unfortunately you will not be able to continue in your position with the company.

Attached is a severance agreement CapsCanada is offering you for your time with our company. This is in addition to your unused vacation time, which will be paid to you regardless whether you agree to the severance or not.

Please note that this is our standard severance agreement. By law, you have 21 days to review and consider this agreement. If unsigned after 21 days, the offer is void. In addition, if you should agree to the terms, you would have 7 days to revoke the agreement should you change your mind.  This is covered in section 4.) of the agreement.

I know I speak for the owners as well as your co-workers that we all have enjoyed working with you over the years.  You have been a thoughtful and conscientious employee and we will all miss you very much.

Please let me know if you have any questions.



## Michael J. McTiernan
VP Finance & Administration

O: ⬛ 6440
M: ⬛ 2365

3236 SW 30th Avenue
Dania Beach, FL 33312, USA


www.capscanada.com

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.   CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>SEVENTEENTH</u>   JUDICIAL CIRCUIT, IN AND FOR <u>BROWARD</u>   COUNTY, FLORIDA

<u>Amparo Berroa</u>
Plaintiff

vs.

<u>Ajix, Inc. d/b/a CapsCanada d/b/a Capsuline</u>
Defendant

Case # _____
Judge _____

### II.   AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

### III.   TYPE OF CASE      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
       ☐ Business governance
       ☐ Business torts
       ☐ Environmental/Toxic tort
       ☐ Third party indemnification
       ☐ Construction defect
       ☐ Mass tort
       ☐ Negligent security
       ☐ Nursing home negligence
       ☐ Premises liability—commercial
       ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
       ☐ Commercial foreclosure
       ☐ Homestead residential foreclosure
       ☐ Non-homestead residential foreclosure
       ☐ Other real property actions

☐Professional malpractice
       ☐ Malpractice—business
       ☐ Malpractice—medical
       ☐ Malpractice—other professional
☒ Other
       ☐ Antitrust/Trade regulation
       ☐ Business transactions
       ☐ Constitutional challenge—statute or ordinance
       ☐ Constitutional challenge—proposed amendment
       ☐ Corporate trusts
       ☒ Discrimination—employment or other
       ☐ Insurance claims
       ☐ Intellectual property
       ☐ Libel/Slander
       ☐ Shareholder derivative action
       ☐ Securities litigation
       ☐ Trade secrets
       ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
  ☐ Residential Evictions
  ☐ Non-residential Evictions
☐ Other civil (non-monetary)

### COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V.    NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

  6̲

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
  ☐ yes
  ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
  ☒ no
  ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
  ☒ yes
  ☐ no

**IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
  ☐ yes
  ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s̲/̲ ̲S̲a̲r̲a̲h̲ ̲K̲a̲t̲i̲n̲a̲ ̲W̲a̲l̲k̲e̲r̲          Fla. Bar # 5̲9̲5̲8̲6̲
            Attorney or party                        (Bar # if attorney)

S̲a̲r̲a̲h̲ ̲K̲a̲t̲i̲n̲a̲ ̲W̲a̲l̲k̲e̲r̲                     0̲3̲/̲0̲9̲/̲2̲0̲2̲3̲
  (type or print name)                      Date

- 3 -

## IN THE CIRCUIT COURT OF THE 17<sup>TH</sup> JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

Case No:_CA 23-3177_____

_Amparo Berroa_____
Plaintiff

Judge Division:_08_____

VS

_Ajix Inc_____
Defendant



### CLERK'S CERTIFICATE OF COMPLIANCE

I hereby certify that pursuant to Administrative Order, No. 2020–73Civ/2020–74–UFC: "ADMINISTRATIVE ORDER DIRECTING CLERK OF COURTS WITH REGARD TO DISMISSED CIVIL OR FAMILY CASES",

The Clerk has conducted a search for all previous existing civil cases related to these two parties.

Listed below are all the aforementioned related cases:

Brenda D. Forman
Circuit and County Courts

By: _____

Deputy Clerk

**IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA
CIVIL DIVISION**

AMPARO BERROA, an individual,                         Case No.:  CACE23003177

       Plaintiff,

v.

AJIX, INC., d/b/a CAPSCANADA
d/b/a CAPSULINE, a Florida Corporation,

       Defendant.

_____/

<u>**NOTICE OF DESIGNATION OF EMAIL ADDRESSES**</u>

      PLEASE TAKE NOTICE that attorney Sarah K. Walker hereby files a Notice of

Designation of Email Addresses on behalf of Plaintiff, AMPARO BERROA, as counsel, at the

following e-mail addresses designated for mandatory electronic service pursuant to Florida

Rules of Judicial Administration, Rule 2.516, in the above-referenced matter:

      **Primary e-mail:**     swalker@smartbizlaw.com
      **Secondary email:**   notice@smartbizlaw.com

*[Remainder of this page intentionally left blank.]*

Dated this 29th day of March, 2023.



CHILDERS LAW, LLC

2135 NW 40th Terrace, Suite B
Gainesville, Florida 32605
tel 866-996-6104  fax 407-209-3870

*/s/ Sarah K. Walker*
Seldon J. Childers
Florida Bar No. 61112
Sarah K. Walker
Florida Bar No. 59586
jchilders@smartbizlaw.com
swalker@smaratbizlaw.com
notice@smartbizlaw.com
*Attorneys for Plaintiff*

## **RETURN OF SERVICE**

**State of Florida**

**County of Broward**

**Circuit Court**

Case Number: CACE23003177

Plaintiff:
**AMPARO BERROA, an individual,**

vs.

Defendant:
**AJIX, INC., d/b/a CAPSCANADA
d/b/a CAPSULINE, a Florida Corporation,**

For:
Childers Law, LLC
2135 Nw 40th Terrace
Suite B
Gainesville, FL 32605

Received by Ira Smith on the 29th day of March, 2023 at 7:48 am to be served on **AJIX, Inc., D/B/A Capscanada D/B/A CAPSULINE, a Florida Corporation, Theodore J.Klein, Registered Agent, 8030 Peters Road- Building D, Suite 104, Plantation, FL 33324.**

I, Ira Smith, do hereby affirm that on the **29th day of March, 2023** at **10:01 am, I:**

**CORPORATE SERVICE, served** the within named entity by delivering a true copy of the **SUMMONS & PLAINTIFF'S COMPLAINT AND DEMAND FOR A JURY TRIAL WITH ATTACHED EXHIBITS A-E** at the address of **Theodore J.Klein, Registered Agent, 8030 Peters Road- Building D, Suite 104, Plantation, FL 33324** with the date and hour endorsed thereon by me to, **ELIZABETH PARDO, LEGAL ASSISTANT TO THEODORE J. KLEIN** as an employee of the Registered Agent listed with the Florida Division of Corporation, pursuant to F.S. 48.091 (4).

**Description** of Person Served: Age: 30, Sex: F, Race/Skin Color: White, Height: 5'5", Weight: 170, Hair: Light Brown, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Special Process Server in good standing in the judicial circuit in which the process was served. Under penalties of perjury, I declare that I have read the forgoing Affidavit/Verified Return of service and the facts stated in it are true and correct. Pursuant to F.S. 92.525(2).

**Ira Smith**
SPS #1569

**Gleason Investigations, LLC
250 Palm Coast Pkwy Ne
Ste. 607-194
Palm Coast, FL 32137
(386) 627-8222**

Our Job Serial Number: GIA-2023001336

Copyright © 1992-2023 Database Services, Inc. - Process Server's Toolbox V8.2i

